# UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF KENTUCKY
### AT LOUISVILLE

**ALBERTO J. SANTIAGO, SR.**                                              **PLAINTIFF**

**v.**                                              **CIVIL ACTION NO. 3:10CV-P39-H**

**NANCY DOOM** *et al.*                                              **DEFENDANTS**

## MEMORANDUM OPINION AND ORDER

Plaintiff Alberto J. Santiago, Sr., acting without the assistance of counsel, filed this action pursuant to 42 U.S.C. § 1983. This matter is before the Court for *sua sponte* screening of the complaint pursuant to 28 U.S.C. § 1915A and *McGore v. Wrigglesworth*, 114 F.3d 601 (6th Cir. 1997). For the reasons that follow, Santiago's claims will be dismissed in part and allowed to proceed in part.

## I. STANDARD OF REVIEW

When a prisoner initiates a civil action seeking redress from a governmental entity, officer or employee, the trial court must review the complaint and dismiss the complaint, or any portion of the complaint, if the court determines that it is frivolous or malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief from a defendant who is immune from such relief. *See* 28 U.S.C. §§ 1915A(b)(1), (2); *McGore*, 114 F.3d at 604.

A claim is legally frivolous when it lacks an arguable basis either in law or in fact. *Neitzke v. Williams*, 490 U.S. 319, 325 (1989). The trial court may, therefore, dismiss a claim as frivolous where it is based on an indisputably meritless legal theory or where the factual contentions are clearly baseless. *Id.* at 327.

In order to survive dismissal for failure to state a claim, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"

*Ashcroft v. Iqbal*, -- U.S. -- , 129 S. Ct. 1937, 1949 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Id.* (citing *Twombly*, 550 U.S. at 556).  "[A] district court must (1) view the complaint in the light most favorable to the plaintiff and (2) take all well-pleaded factual allegations as true."  *Tackett v. M & G Polymers, USA, LLC*, 561 F.3d 478, 488 (6th Cir. 2009) (citing *Gunasekera v. Irwin*, 551 F.3d 461, 466 (6th Cir. 2009) (citations omitted)).  "But the district court need not accept a 'bare assertion of legal conclusions.'"  *Tackett*, 561 F.3d at 488 (quoting *Columbia Natural Res., Inc. v. Tatum*, 58 F.3d 1101, 1109 (6th Cir. 1995)).  "A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'  Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'"  *Iqbal*, 129 S. Ct. at 1949 (quoting *Twombly*, 550 U.S. at 555, 557).

Although this Court recognizes that *pro se* pleadings are to be held to a less stringent standard than formal pleadings drafted by lawyers, *Haines v. Kerner*, 404 U.S. 519 (1972), the duty "does not require us to conjure up unpled allegations," *McDonald v. Hall*, 610 F.2d 16, 19 (1st Cir. 1979), or to create a claim for a plaintiff.  *Clark v. Nat'l Travelers Life Ins. Co.*, 518 F.2d 1167, 1169 (6th Cir. 1975).  To command otherwise would require the Court "to explore exhaustively all potential claims of a *pro se* plaintiff, [and] would also transform the district court from its legitimate advisory role to the improper role of an advocate seeking out the strongest arguments and most successful strategies for a party."  *Beaudett v. City of Hampton*, 775 F.2d 1274, 1278 (4th Cir. 1985).

## II. SUMMARY OF COMPLAINT

According to Santiago, his troubles began on May 7, 2008, when he woke up "paralyzed and could not move due to nerve damage in the spinal cord."[1]  At that time, Santiago, a convicted state inmate, was incarcerated at the Little Sandy Correctional Complex (LSCC). Santiago alleges that a neurologist opined that he needed surgery, but that the Kentucky Department of Corrections did not want to pay for it.  As such, Santiago states that a decision was made to transfer him to a non-medical facility, Green River Correctional Complex (GRCC).[2] Before leaving the LSCC, Santiago alleges that he was visited by Warden Meko.  He states that Warden Meko told him that he was going to make sure that Santiago "suffered where he was going."  Santiago also alleges that he was also told by Warden Meko that once he arrived at GRCC that they were going to "strip him of all his medical needs."[3]

Santiago states that he was transferred from LSCC to GRCC on or about October 27, 2008.  He has filed this lawsuit claiming that he was subjected to a multitude of constitutional and statutory violations while he was incarcerated at GRCC.[4]  Specifically, Santiago alleges that Defendants violated his Eighth Amendment right to be free from cruel and unusual punishment by using excessive force against him and by denying him medical care and other life necessities;

---

[1]Attachments to Santiago's complaint indicate that the nerve damage was caused when he was struck by a truck while incarcerated at the Northpoint Training Facility.

[2]At some previous time during his incarceration, Santiago was housed at the Kentucky State Reformatory (KRS), a medical facility.  He alleges that Warden Meko told him that he would not be transferred back there because he "was a pain in the ass" and they did not want him back.

[3]Santiago did not name Warden Meko as a defendant in this action.

[4]Santiago is now once again incarcerated at KSR in LaGrange, Kentucky.

his First Amendment right not be subjected to retaliation; his First Amendment right to access the courts; his Fourteenth Amendment right to equal protection; his Fifth Amendment right; and his Sixth Amendment right. Santiago also alleges that Defendants violated the Americans with Disabilities Act (ADA) and that certain of the Defendants conspired with one another to violate his rights.

Santiago is suing the following thirty-seven defendants in both their individual and official capacities: (1) former GRCC Warden Nancy Doom; (2) Kentucky Department of Corrections Commissioner LaDonna Thompson; (3) Jenetta Fulkerson, Nurse Administrator; (4) Dr. Hiland; (5) Kimberly Flannery; (6) Kentucky Department of Corrections Medical Director Scott A. Haas, M.D.; (7) Shauna Nelson, Grievance Coordinator; (8) Captain Eric Woodward; (9) Angela Lyle, Nurse; (10) Rob Jenkins; (11) Randy Adkins; (12) Lorenza Abrams; (13) Ruth Rust, Nurse; (14) Susanna Gee, Nurse; (15) Donna Renfrow, Nurse; (16) Sandy McKinney, Nurse; (17) Bonita Zimmerman, Nurse; (18) Rickie Williams, Unit Administrator; (19) Lt. Morriss; (20) Steven Ford, Unit Administrator; (21) Mr. Black, Internal Affairs; (22) Louis R. Korfhage, Deputy Warden; (23) Lynn Chism, Correctional Unit Administrator; (24) Lt. Fred Basham; (25) James Vincent; (26) Ron Beck, Deputy Warden; (27) Lt. Fralailey; (28) Shannon Von; (29) Gary Hayes; (30) Lt. Hope; (31) John M. Dunn, Ombudsman; (32) James L. Erwin, Director of Operations/Programs; (33) Al C. Parks, Deputy Commissioner; (34) Sgt. Abrams Lorenza; (35) Sgt. Eilles; (36) Billy J. Herrin; and (37) Captain Peggy Pennrose.[5] Santiago is seeking both monetary and injunctive relief. The specifics of Santiago's allegations against each Defendant will be discussed in the analysis

---

[5]Santiago spells the Defendants' names differently throughout his complaint. For consistency, the Court has adopted the spellings used by Santiago in the parties' section.

section.


# III. ANALYSIS

## A. OFFICIAL-CAPACITY MONEY DAMAGES CLAIMS

Santiago sues each Defendant in his or her official capacity. Because he sues state employees in their official capacities, his claims against them are deemed claims against the Commonwealth of Kentucky itself. *See Kentucky v. Graham*, 473 U.S. 159, 166 (1985). To state a § 1983 claim, a plaintiff must allege that a "person" acting under color of state law deprived the plaintiff of a right secured by the Constitution or federal law. *See* § 1983. States, state agencies, and state officials sued in their official capacities for money damages are not "persons" subject to suit under § 1983. *Will v. Mich. Dep't of State Police,* 491 U.S. 58, 71 (1989). Thus, because Santiago seeks money damages from these state officers in their official capacities, he has failed to allege cognizable claims under § 1983. Moreover, the defendants are immune from monetary damages under the Eleventh Amendment. *See id.* The Court will dismiss Plaintiff's § 1983 official-capacity money damages claims.[6]

## B. CLAIMS AGAINST DEFENDANTS THOMPSON, HAAS, AND PARKS

Defendant Thompson is the Commissioner of the KDOC. Defendant Parks is the KDOC Deputy Commissioner. Defendant Haas is the KDOC medical director. These Defendants are not mentioned by name anywhere in the body of Santiago's complaint. They are only listed in the parties' section of the complaint. This indicates to the Court that Santiago is

---

[6]In some instances, the ADA is an exception to the Eleventh Amendment immunity given to states. *See Tennessee v. Lane,* 541 U.S. 509 (2004). Accordingly, the Court will address Santiago's ADA claim later in this opinion with respect to both his individual and official-capacity claims.

attempting to hold these Defendants liable based on their supervisory positions within the KDOC.

"Respondeat superior[7] is not a proper basis for liability under § 1983." *McQueen v. Beecher Cmty. Schs.*, 433 F.3d 460, 470 (6th Cir. 2006). "Nor can the liability of supervisors be based solely on the right to control employees, or simple awareness of employees' misconduct." *Id.* (internal quotations omitted). "In order for supervisory liability to attach, a plaintiff must prove that the official 'did more than play a passive role in the alleged violation or showed mere tacit approval of the goings on.'" *Loy v. Sexton*, 132 F. App'x 624, 626 (6th Cir. 2005) (quoting *Bass v. Robinson*, 167 F.3d 1041, 1048 (6th Cir. 1999)). In other words, "liability under § 1983 must be based on active unconstitutional behavior." *Shehee v. Luttrell*, 199 F.3d 295, 300 (6th Cir.1999). "A supervisor's awareness of allegations of unconstitutional conduct and failure to act are not a basis for liability." *McCurtis v. Wood*, 76 F. App'x 632, 634 (6th Cir. 2003). Thus, Defendants Thompson, Parks, and Haas cannot be held liable based solely on their positions within the KDOC. *See, e.g.*, *Brown v. Green*, No. 97-1117, 1997 U.S. App. LEXIS 35331 (6th Cir. Dec. 12, 1997) ("Defendant Green, being sued in her official capacity as the Medical Director of the Michigan Department of Corrections, cannot be held liable for an alleged constitutional violation, because the doctrine of respondeat superior does not apply in § 1983 lawsuits to impute liability onto supervisory personnel."); *Farrow v. West*, 320 F.3d 1235, 1238 n.1 (11th Cir. 2003) (holding that the regional director of prison medical services was not liable for actions of subordinate medical staff). Because Santiago's allegations against these

---

[7]Respondeat superior is "the doctrine under which liability is imposed upon an employer for the acts of his employees committed in the course and scope of their employment." BALLENTINE'S LAW DICTIONARY (3d ed. 1969).

Defendants relate only to their supervisory roles within the KDOC, the Court will dismiss Santiago's claims against them for failure to state a claim.  *See Shehee*, 199 F.3d at 300.

## C.    INJUNCTIVE RELIEF CLAIMS

All the remaining Defendants appear to be employees or officials at GRCC.  Santiago is no longer incarcerated at GRCC.  Accordingly, his injunctive relief claims are moot and will be dismissed.  *See Kensu v. Haigh*, 87 F.3d 172, 175 (6th Cir. 1996) (finding inmate's request for injunctive relief moot as he was no longer confined to the institution where the alleged wrongdoing occurred).

## D.    FIFTH AMENDMENT CLAIM

The Fifth Amendment of the United States Constitution provides:

> No person shall be held to answer for a capital, or otherwise infamous crime, unless on a presentment or indictment of a Grand Jury, except in cases arising in the land or naval forces, or in the Militia, when in actual service in time of War or public danger; nor shall any person be subject for the same offense to be twice put in jeopardy of life or limb; nor shall be compelled in any criminal case to be a witness against himself, nor be deprived of life, liberty, or property, without due process of law; nor shall private property be taken for public use, without just compensation.

U.S. Const., amend. V.

Santiago fails to explain how the Fifth Amendment applies to his claims.  To the extent that Santiago is attempting to rely on the Due Process Clause of the Fifth Amendment, it circumscribes only the actions of the federal government.  *See, e.g., Sturgell v. Creasy*, 640 F.2d 843, 850 (6th Cir. 1981); *Walker v. Hughes*, 558 F.2d 1247, 1257 (6th Cir. 1977).  Here, the actions of state, not federal, officials are at issue.

To the extent that Santiago is alleging that Defendants violated his rights under the Taking Clause by confiscating his personal wheelchair, he has failed to allege that available state remedies have been pursued and have failed to provide adequate compensation.  *Hudson v.*

*Palmer*, 468 U.S. 517, 539 (1984) (O'Connor, J., concurring).

Based on the facts alleged by Santiago, the Court concludes that he has not stated a cognizable Fifth Amendment claim against Defendants. As such, the Court will dismiss Santiago's Fifth Amendment claims.

**E.      SIXTH AMENDMENT CLAIM**

The Sixth Amendment of the United States Constitution provides:

> In all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial, by an impartial jury of the State and district wherein the crime shall have been committed, which district shall have been previously ascertained by law, and to be informed of the nature and cause of the accusation; to be confronted with the witnesses against him; to have compulsory process for obtaining witnesses in his favor, and to have the Assistance of Counsel for his defence.

U.S. Const., amend. V.

Santiago has not alleged any facts related to his criminal prosecution or trial. Thus, the Sixth Amendment is not implicated. As such, the Court will dismiss Santiago's Sixth Amendment claims.

**F.      FIRST AMENDMENT DENIAL OF ACCESS-TO-COURTS CLAIM**

The right of access to the courts is a fundamental right protected by the United States Constitution. *Swekel v. City of River Rouge*, 119 F.3d 1259, 1261 (6th Cir. 1997); *Graham v. Nat'l Collegiate Athletic Ass'n*, 804 F.2d 953, 959 (6th Cir. 1986). This right encompasses a person's right to physically access the court system and ensures the access will be "adequate, effective, and meaningful." *Bounds v. Smith*, 430 U.S. 817, 822 (1977). To state a claim for denial of access to the courts, an actual injury must be alleged. *Harbin-Bey v. Rutter*, 420 F.3d 571, 578 (6th Cir. 2005); *Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999). Thus, a prisoner must show "actual prejudice to pending or contemplated litigation." *Jackson v. Gill*, 92

F. App'x 171, 173 (6th Cir. 2004); *Lewis v. Casey*, 518 U.S. 343, 351 (1996). Examples of actual prejudice include having a case dismissed, being unable to file a complaint, and missing a court-imposed deadline. *Harbin-Bey*, 420 F.3d at 578; *Walker v. Mintzes*, 771 F.2d 920, 932 (6th Cir. 1985).

Here, while Santiago alleges that on several occasions various Defendants destroyed his legal papers, took his books, and denied him access to the law library, he never specifically states what documents were destroyed or taken nor does he say how the unavailability of these documents prejudiced him. Because Santiago has not satisfied the prejudice prong, he has failed to state claim for denial of access to the courts. As such, the Court will dismiss this claim.

## G.      CONSPIRACY CLAIM

Santiago alleges that on November 15, 2009, Defendants Fulkerson, Lyle, Adkins, Abrams, Rust, Gee, Renfrow, McKinney, Zimmerman, and Hiland conspired with one another to violate his constitutional rights. Santiago's allegations of conspiracy are wholly conclusory and unsupported by any specific facts. As such, they are insufficient to state a claim under § 1983. *See Gutierrez v. Lynch*, 826 F.2d 1534, 1538 (6th Cir. 1987) ("It is well-settled that conspiracy claims must be pled with some degree of specificity and that vague and conclusory allegations unsupported by material facts will not be sufficient to state such a claim under § 1983."); *Ana Leon T. v. Fd. Reserve Bank*, 823 F.2d 928, 930 (6th Cir. 1987). As Santiago has failed to meet the pleading standard required to state a claim for conspiracy, the Court will dismiss this claim.

## H.      RACIAL DISCRIMINATION CLAIM

Santiago alleges that at various times several of the Defendants spoke to him in a racially derogatory manner. A prison official's use of racial epithets is unprofessional and highly reprehensible, and it deserves the Court's strongest condemnation. An allegation that a prison

official used racial slurs, however, does not violate the Eighth Amendment's prohibition on cruel and unusual punishment. *See Ivey v. Wilson*, 832 F.2d 950, 954 (6th Cir. 1987); *Jones Bey v. Johnson*, 248 F. App'x 675, 677-78 (6th Cir. 2007) (holding that prison guard's use of racial slurs and other derogatory language against state prisoner did not rise to level of a violation of the Eighth Amendment) (citing *Torres v. County of Oakland*, 758 F.2d 147, 152 (6th Cir. 1985)). Nor does an allegation that a prison official used racial slurs, standing alone, violate the Fourteenth Amendment's guarantee of equal protection. *See Williams v. Kaufman County*, 352 F.3d 994, 1013 & n.61 (5th Cir. 2003). Consequently, Santiago's complaint fails to state a viable claim for racial discrimination.

## I.    AMERICANS WITH DISABILITIES ACT CLAIM

With respect to Santiago's ADA claim, he alleges, "I was deny my personal wheelchair I brought and pay for, deny me physical therapy, medical consultations, and medical devises crutches, back brace, medical treatment for my back and muscle rub." Santiago infers in his complaint that these denials were based on Defendants' failure to acknowledge his disability and as punishment for the grievances and lawsuits he filed against them.

Title II of the ADA provides, in pertinent part, that no qualified individual with a disability shall, because of that disability, "be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. § 12132. The ADA applies to both state and federal prisons. *See Pa. Dep't of Corr. v. Yeskey*, 524 U.S. 206 (1998). A plaintiff seeking to state a claim under the ADA must show that he is "(1) disabled under the statute, (2) otherwise qualified for participation in the program, [services or activities], and (3) being excluded from participation in, denied the benefits of, or subjected to discrimination under the program, [services, or activities] by reason of his disability." *S.S. v. E.*

*Ky. Univ.*, 532 F.3d 445, 453 (6th Cir. 2008).

Even assuming that all facts alleged by Santiago are true, he does not establish that he was denied any services offered by the prison or that any acts or omissions about which he complains were *caused* by his alleged disability. To the contrary, he alleges that his wheelchair *etc*. were taken from him because Defendants would not recognize him as disabled. This is insufficient to state an ADA claim. *See Rashad v. Doughty*, 4 F. App'x 558 (10th Cir. 2001) (holding that the failure to provide medical treatment to a disabled inmate does not constitute a violation of the ADA); *Bryant v. Madigan*, 84 F.3d 246, 249 (7th Cir. 1996) (holding that plaintiff failed to state a claim under the ADA where he alleged that his disability was not treated properly by prison physicians). Santiago's ADA claim will be dismissed for failure to state a claim.

**J.     FIRST AMENDMENT RETALIATION CLAIM**

**1.     Legal framework**

Retaliation based upon a prisoner's exercise of his constitutional rights violates the Constitution. *See Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999) (en banc). In order to set forth a First Amendment retaliation claim, a prisoner-plaintiff must establish that: (1) he was engaged in protected conduct; (2) an adverse action was taken against him that would deter a person of ordinary firmness from engaging in that conduct; and (3) the adverse action was motivated, at least in part, by the protected conduct. *Id.*

Santiago alleges that he was engaged in protected conduct – filing grievances and legal complaints. *See Herron v. Harrison*, 203 F.3d 410, 415 (6th Cir. 2000) (holding that prisoner has a First Amendment right to file a grievance against prison officials on his own behalf, and this right is protected if the grievance is not frivolous). Thus, for the purpose of initial review,

Santiago's complaint satisfies the first element.

As for the third element, Santiago alleges that nearly every Defendant told him at one point or another that his/her actions against him were motivated by the grievances and lawsuits he had filed, and that if he stopped filing grievances, his situation in the prison would improve. The statements Defendants allegedly made connect the adverse actions Santiago experienced to Santiago's grievances and lawsuits. At the this stage of the litigation, the Court is bound to presume that the statements Santiago attributes to Defendants in his complaint are true. If the Court presumes the truth of the allegations, Santiago has satisfied the third element for the purpose of initial review.

The second element, however, involves a more in depth analysis. Not all undesirable conduct satisfies this element. Only that conduct that would deter a person of ordinary firmness from engaging in protected conduct satisfies the second element. As the *Thaddeus-X* court noted, "since there is no justification for harassing people for exercising their constitutional rights, [the deterrent effect] need not be great in order to be actionable." 175 F.3d at 397 (quoting *Bart v. Telford*, 677 F.2d 622, 625 (7th Cir. 1982)). A constitutional tort, however, requires that the plaintiff suffer an injury, and it would certainly "trivialize the First Amendment to hold that harassment for exercising [one's constitutional rights] was always actionable no matter how unlikely to deter a person of ordinary firmness from that exercise . . . ." *Thaddeus-X*, 175 F.3d at 397 (*quoting Bart*, 677 F.2d at 625). Thus, the test is whether a reasonable trier of fact could conclude that a retaliatory act would deter a person from exercising his rights. *Bell*, 308 F.3d at 603.

## 2. Santiago's allegations

Santiago complains of several instances of retaliation. Each is summarized and analyzed

below.

      **a.**     Santiago complains that when he arrived at GRCC on October 27, 2008, Defendants Doom, Woodward, and Abrams took his wheelchair away from him. He further alleges that at various times in 2009, Defendant Doom had him placed in a non-handicapped cell forcing him to crawl on his hands and knees to get to meals and showers. He claims that he was told that this was punishment for his lawsuits and grievances. Santiago also alleges that on July 6, 2009, he spoke to Defendants Hayes and Doom concerning not being able to make it to the kitchen, medical, law library, and religious services, because they took his wheelchair away and placed him in a remote, non-handicapped cell. He claims that they responded by telling him to "go to hell . . . take the lawsuit off and we will stop."

      Assuming that Santiago truly required a wheelchair and handicapped cell, then taking those things away from him under appropriate circumstances could deter a person of ordinary firmness. Thus, the Court will allow this part of Santiago's First Amendment retaliation claim to proceed for further development as against Defendants Doom, Woodward, Abrams, and Hayes.

      **b.**     Santiago claims that on August 25, 2009, he was "assaulted" by Defendants Basham, Morris, Abrams, and another unknown officer. He states that he had filed grievances against these individuals and that during the assault he was told by them that if he kept filing grievances that they would keep on assaulting him.

      Conclusory allegations of an "assault" do not suffice to state a retaliation claim. An "assault" that is comprised of merely a push or a shove without corresponding injury of any kind would not deter a person of ordinary firmness. However, a full-blown physical assault with serious injury surely would do so. Santiago has not alleged sufficient facts for the Court to allow this claim to proceed. As such, the Court will dismiss this portion of Santiago's retaliation

13

claim.

   **c.**  Santiago claims that he filed a grievance on Defendant Ford and as punishment for doing so, on May 10, 2009, he was dragged out of his cell, thrown in the shower, and left there for four fours. He infers that he was unable to get out of the shower on his on accord because he cannot walk without assistance.

   The Court will allow this portion of Santiago's retaliation claim to proceed for further development as against Defendant Ford.

   **d.**  Santiago states that on April 20, 2009, he filed a grievance on all the officers in segregation, and as a result, his meals were brought late and cold.

   Late and/or cold meals would not deter a person of ordinary firmness for exercising his constitutional rights. The Court will dismiss this portion of Santiago's retaliation claim.

   **e.**  Santiago states that on January 6, 2009, Defendants Morriss and Ford; someone named Whitmer, and two unknown officers removed him from his cell, cuffed him behind his back, and forced him to crawl on his hands and knees for an hour. He states that he was told that this was the "retaliation game" and that he would have to keep playing it as long as he kept filing grievances.

   The Court will allow this portion of Santiago's retaliation claim to proceed for further development as against Defendants Morriss and Ford. Santiago did not name a "Whitmer" as a Defendant in the parties' section of his complaint. As such, the Court does not consider him to be a Defendant to this action at this time.

   **f.**  Santiago alleges that on January 15, 2009, Defendants Abrams and Beck pushed him to the ground and told him that inmates that file grievances do not get any help.

   A single push without resulting injury would not deter a person of ordinary firmness.

The Court will dismiss this portion of Santiago's retaliation claim.

**g.** Santiago alleges that on January 27, 2009, Defendants Hope and Black removed him from the canteen line.

This conduct would not deter a person of ordinary firmness. The Court will dismiss this portion of Santiago's retaliation claim.

**h.** Santiago alleges that on either February 4 or 15, 2009, Defendants Doom and Pennrose saw him coming back from church and called him a grievance writer and trouble maker. He alleges that they then pushed him to the ground causing his hand to be injured as it struck or was caught in some object. Santiago states that his injuries required a trip to the hospital and stitches in his hand.

The Court will allow this portion of Santiago's retaliation claim to proceed for further development as against Defendants Doom and Pennrose.

**i.** Santiago alleges that on February 26, 2009, he fell and was having problems standing. He states that Defendant Morriss instructed other inmates not to assist him. Defendant Morriss then told Santiago that "you are going to hate us when we are done . . . drop the lawsuit and we will leave you alone." On this same day, Santiago alleges that Defendant Doom ordered all the other staff to refrain from helping Santiago if he fell. Santiago alleges that his stitches came open, but due to this directive he was not helped by medical.

Simply instructing inmates not to assist a fellow inmate in standing is not sufficient to deter a person or ordinary firmness. Thus, the Court will dismiss Santiago's claim against Defendant Morriss as described above. Instructing staff to refrain from helping an inmate that has a legitimate need for medical care could deter a person of ordinary firmness especially if he needed, but was denied medical care. Accordingly, the Court will allow Santiago's First

Amendment retaliation claim against Defendant Doom as set forth above to proceed for further development.

**j.** Santiago claims that on January 25, 2009, Defendants Abrams and Eilles came to his dorm at the direction of Defendant Black and removed all of his legal papers from his cell.

The Sixth Circuit has held that confiscating an inmate's legal papers and other property as well as conducting a retaliatory search and seizure of an inmate's legal documents is conduct sufficient to support a First Amendment retaliation claim. *See Bell v. Johnson*, 308 F.3d 594, 604 (6th Cir. 2002). Accordingly, the Court will allow this portion of Santiago's First Amendment retaliation claim to proceed for further development as against Defendants Abrams, Eilles, and Black.

**k.** Santiago alleges that he "got 16 writeup and lost 80 days of good time [credit]" as punishment for filing grievances.

While charging an inmate with false disciplinary charge could deter an individual, Santiago fails to allege in his complaint that the writeups were false or to name the persons responsible for them. As such, he has failed to state a retaliation claim based on these facts. This portion of his First Amendment retaliation claim will be dismissed.

**3. Summary**

In summary, the Court will allow the following First Amendment retaliation claims to proceed for further development: 1) the claim that Defendants Woodward, Doom and Abrams took away Santiago's wheelchair upon entry to GRCC in retaliation for lawsuits and grievances he filed at other institutions; 2) the claim that Defendants Doom and Hayes moved Santiago out of a handicapped cell and put him in a cell that was very far from the dining hall and other facilities forcing Santiago to crawl to get to meals *etc.* in retaliation for the grievances and

lawsuits Santiago filed at LLCC and GRCC; 3) the claim that Defendant Ford threw Santiago in the shower and made him stay in it for four hours in retaliation for a grievance Santiago filed against Defendant Ford; 4) the claim that Defendants Morriss and Ford forced Santiago to crawl on his hands and knees for an hour in front of them in retaliation for grievances he filed against them; 5) the claim that Defendants Doom and Pennrose assaulted Santiago causing an injury to his hand that required a trip to the hospital and stitches in retaliation for his lawsuits and grievances; 6) the claim that Defendant Doom instructed all staff, including medical, not to offer Santiago any assistance in retaliation for his filing grievances and lawsuits; and 7) the claim that Defendants Abrams and Eilles came to his dorm at the direction of Defendant Black and removed his legal papers in retaliation for his lawsuits and grievances.

**K.    EIGHTH AMENDMENT CRUEL-AND-UNUSUAL-PUNISHMENT CLAIM**

### 1.    Legal Framework

Santiago alleges that Defendants violated his Eighth Amendment right to be free from cruel and unusual punishment by subjecting him to excessive force and by denying him medical care and other necessities.

"[W]henever prison officials stand accused of using excessive physical force in violation of the Cruel and Unusual Punishments Clause, the core judicial inquiry is . . . whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." *Hudson v. McMillian*, 5 U.S. 8, 6-7 (1992). "When prison officials maliciously and sadistically use force to cause harm, contemporary standards of decency always are violated." *Id.* at 9. "[T]he use of excessive physical force against a prisoner may constitute cruel and unusual punishment [even] when the inmate does not suffer serious injury." *Id.* at 4. In *Wilkins v. Gaddy*, --U.S.--, 130 S.Ct. 1175, 175 L. Ed. 2d 995 (2010) (per curiam), the Supreme

Court reaffirmed the holding of *Hudson* and stated:

> [The *Hudson*] Court rejected the notion that "significant injury" is a threshold requirement for stating an excessive force claim. The "core judicial inquiry," we held, was not whether a certain quantum of injury was sustained, but rather "whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." 503 U.S. at 7, 112 S.Ct. 995; *see also Whitley v. Albers*, 475 U.S. 312, 319-321 (1986). "When prison officials maliciously and sadistically use force to cause harm," the Court recognized, "contemporary standards of decency always are violated . . . whether or not significant injury is evident. Otherwise, the Eighth Amendment would permit any physical punishment, no matter how diabolic or inhuman, inflicting less than some arbitrary quantity of injury." *Hudson*, 503 U.S. at 9; *see also id.*, at 13-14 (Blackmun, J., concurring in judgment) ("The Court today appropriately puts to rest a seriously misguided view that pain inflicted by an excessive use of force is actionable under the Eighth Amendment only when coupled with 'significant injury,' e.g., injury that requires medical attention or leaves permanent marks.").

*Wilkins*, 130 S. Ct. at 1178. "This is not to say that the 'absence of serious injury' is irrelevant to the Eighth Amendment inquiry." *Id.* (quoting *Hudson*, 503 U.S. at 7). The extent of injury suffered by the inmate is relevant to the and may in certain situations provide some indication of the amount of force applied. *Id.* Of course, not "every malevolent touch by a prison guard gives rise to a federal cause of action," and "*de minimis* uses of physical force" do not support a constitutional claim. *Hudson*, 503 U.S. at 9. "An inmate who complains of a 'push or shove' that causes no discernible injury almost certainly fails to state a valid excessive force claim." *Wilkins*, 130 S. Ct. at 1178.

Additionally, denying an inmate medical care and other necessities commiserate with minimal standards of human existence can violate the Eight Amendment proscription against cruel and unusual punishment when the defendant acts with deliberate indifference. *See Rhodes v. Chapman*, 452 U.S. 337, 346 (1981). To succeed on such an Eighth Amendment challenge, the plaintiff-inmate must establish that (1) a single, identifiable necessity of civilized human

existence is being denied (objective prong) and (2) the defendant prison official acted with a sufficiently culpable state of mind (subjective prong). *See, e.g., Wilson v. Seiter*, 501 U.S. 294, 298 (1991); *Brown v. Bargery*, 207 F.3d 863, 867 (6th Cir. 2000).

## 2. Santiago's claims

a. Santiago alleges that on or about February 4 or 15,[8] Defendants Doom and Pennrose pushed him to the ground causing his hand to strike or become caught in some object necessitating a trip to the hospital and stitches. Santiago alleges that these Defendants acted in the absence of a legitimate penological justification and their actions were designed solely to punish him for the grievances he had filed while at GRCC.

The Court will allow this claim to proceed for further development as against Defendants Doom and Pennrose.

b. Santiago alleges that on or about February 15, 2009, Defendants Morriss, Gee and Eilles refused to help Santiago to his cell even after he fell numerous times.

Santiago has not alleged that he endured pain when he fell or that he was left on the floor for any prolonged period of time. Furthermore, he has not alleged any resulting injury. The Court will dismiss this portion of Santiago's Eighth Amendment claim.

c. Santiago alleges that on February 15, 2009, Defendants Fulkerson, Von, Zimmerman, Rust, Gee, Renfrow, McKinney, Eilles, and Garrett[9] laughed at him as he struggled to reach his cell.

---

[8]In some places of his complaint, Santiago states that the date was February 4 and in others he states that it was February 15. At this point, the exact date is not relevant to the Court's analysis.

[9]There is no "Garrett" listed in parties' section of Santiago's complaint.

Verbal taunting is not actionable under the Eighth Amendment. *See Ivey*, 832 F.2d at 955; *Cumbey v. Meachum*, 684 F.2d 712 (10th Cir. 1981); *Oltarzewski v. Ruggiero*, 830 F.2d 136 (9th Cir. 1987). The Court will dismiss this portion of Santiago's Eighth Amendment claim.

**d.**  Santiago alleges that on February 26, 2009, Defendant Doom ordered medical not to assist Santiago when the stitches on his hand came open and that she directed prison officials not to process his grievances.

The Court will allow Santiago's Eighth Amendment claim that Defendant Doom directed medical not to assist Santiago when his stitches came open to proceed for further development. However, the Court will dismiss his claim that Defendant Doom instructed officials not to process his grievances because there is "no constitutionally protected due process interest in unfettered access to a prison grievance procedure." *Walker v. Mich. Dep't of Corr.*, 128 F. App'x 441, 445 (6th Cir. 2005).

**e.**  Santiago alleges that on February 13, 2009, Defendant Williams refused to bring Santiago's food to his cell when he was unable to walk to the kitchen.

 "Courts have consistently found that missing a single meal does not rise to the level of a constitutional violation." *Marr v. Case*, No. 1:07-cv-823, 2008 U.S. Dist. LEXIS 4427 (W.D. Mich. Jan. 18, 2008) (collecting cases). The Court will dismiss this portion of Santiago's Eighth Amendment claim.

**f.**  Santiago alleges that on February 28, 2009,  he went to medical and they would not take his stitches out of his hand.

Santiago fails to identify who in medical refused him, that the removal of his stitches was necessary at that time, or any adverse consequences he suffered as a result of medical's failure to

remove the stitches on that date.  As such, the Court will dismiss this portion of Santiago's Eighth Amendment claim.

**g.**     Santiago alleges that on February 27, 2009, he asked "the doctor" about rectal bleeding and the doctor responded by calling officers and asking Santiago to leave.  He alleges that he was again denied medical treatment for rectal bleeding by Defendant Zimmerman on September 25, 2009.

Again, Santiago fails to identify which "doctor" refused him treatment, that the rectal bleeding was serious, or that he suffered any adverse consequences from this event.  Moreover, the exhibits attached to his complaint indicate that he was not refused treatment.  Rather, it appears that Santiago presented medical with a stool sample that he had collected and deposited himself in a manila envelope.  He was informed that this was improper and the sample was discarded as a bio-hazard.  Santiago was then informed that lab work would be performed on him and that all his issues would be addressed when his lab work came back.  The Court will dismiss this portion of Santiago's Eighth Amendment claim.

**h.**     Santiago alleges that on February 13, 2009, Defendants Gee and Williams refused to give him a wheelchair or crutches to assist him in getting around the prison.

Given Santiago's prior assertions in his complaint that he is not able to ambulate without assistance, the Court will allow this portion of Santiago's Eighth Amendment claim to proceed for further development as against Defendants Gee and Williams.

**i.**     Santiago alleges that on or about June 9, 2009, he was forced to get a recreation card by Defendant Doom.

Santiago does not allege, however, that he was forced to recreate in any manner that caused him harm.  The Court will dismiss this portion of Santiago's Eighth Amendment claim.

**j.** Santiago alleges that Defendants Fulkerson and Hiland denied him "adult briefs" for urinary incontinence and refused to allow him to have clean linens for several weeks after he repeatedly wet himself when his legs went numb in his bed.

The Court will allow this portion of Santiago's Eighth Amendment claim to proceed for further development.

**k.** Santiago alleges that Defendants Hope and Hayes made him crawl on his hands and knees back to his dorm and that afterwards, his legs hurt for fifteen days.

The Court will allow this portion of Santiago's Eighth Amendment claim to proceed for further development.

**l.** Santiago alleges that on June 20, 2009, Defendant Hiland kicked him out of medical and "punched" him.

As noted earlier, not every push or shove gives rise to an Eighth Amendment claim. Santiago has not alleged how he was injured by the "punch" or what medical care he was denied when he was "kicked out" of medical. The Court will dismiss this portion of Santiago's Eighth Amendment claim.

**m.** Santiago alleges that on February 12, 2009, Defendants Hiland and Fulkerson told him that they were not going to give him "medication" because it was too expensive.

Santiago fails to allege what "medicine" they would not give him, why he needed medication or what adverse effects he suffered from the lack of medication. Accordingly, he has not stated a valid Eighth Amendment claim. The Court will dismiss this portion of Santiago's Eighth Amendment claim.

**n.** Santiago alleges that on March 31, 2009, he was kicked out of medical.

Again, because Santiago fails to allege who kicked him out and what type of treatment he was denied, the Court will dismiss this portion of his Eighth Amendment claim.

**o.** On March 19, 2009, Santiago states that he went to medical for pain, and Defendant Flannery offered him Tylenol. Santiago alleges that this violated his rights because he wanted "treatment" not "medication."

At most, Santiago has alleged that he disagreed with Defendant Flannery's decision to treat him with Tylenol. An Eighth Amendment violation is not demonstrated by a mere disagreement over diagnosis or the proper course of treatment. *See Estelle v. Gamble*, 429 U.S. 97, 104-05 (1976). The Court will dismiss this portion of Santiago's Eighth Amendment claim.

**p.** Santiago also claims that on July 2, 2009, he requested a copy of his medical file. He infers that his request was not honored.

Santiago is not constitutionally entitled to a copy of his medical records. As such, the Court will dismiss this claim.

**q.** Santiago alleges that July 21, 2009, he was told he would be without medical treatment for the remainder of his stay at GRCC, and on October 10, 2009, Defendant Hope would not take him to medical for a muscle spasm. He further alleges that on February 15, 2009, Defendant Renfrow refused to treat him for a back spasm and left him sitting on the floor.

Santiago has failed to allege that his back/muscle spasms are a serious medical need, and he has failed to allege that he suffered any resulting injury as a result of these Defendants' refusals to treat his back/muscle spasms. As such, the Court will dismiss this portion of Santiago's Eighth Amendment claim.

**r.** Santiago alleges that on September 29, 2009, Defendants Morriss and Doom came to his cell, asked him why it smelled like urine, and then dragged him to the shower

23

against his will.  He alleges that Defendant Ford did the same thing to him on July 30, 2009.

Santiago has not alleged anything more than *de minimus* use of force without any resulting injury.  As such, the Court will dismiss this portion of his Eighth Amendment claim

      **s.**      Santiago alleges that on October 16, 2009, Defendants Rust and Lyle grabbed him by the arms and pushed him out of medical.

Again, Santiago has alleged nothing more than the use of *de minimus* force against him without any resulting injury, and the Court will dismiss this portion of his Eighth Amendment claim.

      **t.**      Santiago alleges that on January 3, 2009, Defendant Doom instructed five officers to drag him out of his cell in segregation.

A prisoner had no right to be housed in any particular section of the prison or assigned any particular security classification.  *Montanye v. Haymes*, 427 U.S. 236, 242 (1976).  Thus, Santiago's removal from segregation against his will did not violate the Constitution. Furthermore, Santiago has not alleged that officers used anything more than *de minimus* force when they dragged him out of his cell.  The Court will dismiss this portion of his Eighth Amendment claim.

      **u.**      Santiago alleges that on January 15, 2009, he was shot with a stun gun and afterwards was refused medical attention.  He states that as a result of this occurrence he "had to stay in bed for one month and was deny food and clean sheets."

Santiago has failed to attribute this conduct to any of the defendants.  Accordingly, this claim will be dismissed.

      **v.**      Santiago alleges that on April 12, 2009, Defendant Abrams and Eilles told other inmates not to assist Santiago when he was having a muscle spasm.  He also alleges that on

April 19, 2009, Defendant Nelson instructed two inmates that were carrying Santiago to put him down.

Santiago does not have a constitutional right to assistance from other inmates. Accordingly, this claim will be dismissed.

**w.**     Santiago alleges that on July 22, 2009, Defendant Morriss grabbed him, pushed him to the ground, and had two other officers drag him to his cell.  He also alleges that Defendant Adkins pushed him to the ground on August 21, 2009.

Again, Santiago has not alleged anything more than *de minimus* use of force without resulting injury.  These claims will be dismissed.

**x.**     Santiago alleges that on August 30, 2009, he was attempting to go to medical to get "foot cream" and was stopped by Defendant Renfrow.

Santiago has failed to state a claim because he has failed to allege that he was denied treatment for a *serious* medical need and has failed to allege any resulting injury.  This claim will be dismissed.

**y.**     Santiago alleges that on March 2, 2006, Defendant Williams placed Santiago in a room all by himself and turned the air conditioner up all the way while the other administrators walked by and laughed at him.

Santiago appears to allege that Defendant Williams' sole purpose for placing Santiago in the "cold room" was to inflict pain on him as a form of punishment for the grievance he filed. The Court will allow Santiago's Eighth Amendment excessive force claim against Defendant Williams to proceed for further development.

**3.     Summary**

In summary, the Court will allow the following Eighth Amendment cruel and unusual

punishment claims to proceed for further development: 1) the claim that on or about February 4 or 15, 2009, Defendants Doom and Pennrose pushed Santiago resulting in an injury to his hand that required a trip to the hospital and stitches; 2) the claim that Defendant Doom directed medical not to assist Santiago when his stitches came open; 3) the claim that Defendants Gee and Williams refused to give Santiago a wheelchair or crutches to assist him in getting around the prison; 4) the claim that Defendants Fulkerson and Hiland denied Santiago adult briefs and clean linens when he suffers from urinary incontinence; 5) the claim that Defendants Hope and Hayes made Santiago crawl to his cell on his hands and knees; and 6) the claim that Defendant Williams placed Santiago in a room all by himself and turned the air conditioner up to punish Santiago for filing grievances.

## IV. ORDER

For the reasons set forth above and being otherwise sufficiently advised, it is **HEREBY ORDERED** that:

1)       Santiago's Fifth Amendment, Sixth Amendment, Americans With Disability Act, First Amendment Denial of Access to Courts, Racial Discrimination, conspiracy, and injunctive relief claims are **DISMISSED** pursuant to 28 U.S.C. § 1915A(b)(1) for failure to state a claim upon which relief may be granted;

2)       Santiago's 42 U.S.C. § 1983 official-capacity money damages claims are **DISMISSED** pursuant to 28 U.S.C. § 1915A(b)(2) for seeking monetary relief from defendants who are immune from such relief;

3)       All of Santiago's First Amendment retaliation claims are **DISMISSED** pursuant to 28 U.S.C. § 1915A(b)(1) for failure to state a claim upon which relief may be granted *except* the following:  1) the claim that Defendants Doom, Woodward and Abrams took away

Santiago's wheelchair upon entry to GRCC in retaliation for lawsuits and grievances he filed at other institutions; 2) the claim that Defendants Doom and Hayes moved Santiago out of a handicapped cell and put him in a cell that was very far from the dining and other facilities forcing Santiago to crawl to get to meals *etc.* in retaliation for the grievances and lawsuits Santiago filed at LLCC and GRCC; 3) the claim that Defendant Ford threw Santiago in the shower and made him stay in it for four hours in retaliation for a grievance Santiago filed against Defendant Ford; 4) the claim that Defendants Morriss and Ford forced Santiago to crawl on his hands and knees for an hour in front of them in retaliation for grievances he filed against them; 5) the claim that Defendants Doom and Pennrose assaulted Santiago causing an injury to his hand that required a trip to the hospital and stitches in retaliation for his lawsuits and grievances; 6) the claim that Defendant Doom instructed all staff, including medical, not to offer Santiago any assistance in retaliation for his filing grievances and lawsuits; and 7) the claim that Defendants Abrams and Eilles came to his dorm at the direction of Defendant Black and removed his legal papers in retaliation for his lawsuits and grievances.

   4)  All of Santiago's Eighth Amendment cruel and unusual punishment claims are **DISMISSED** pursuant to 28 U.S.C. § 1915A(b)(1) for failure to state a claim upon which relief may be granted *except* the following: 1 ) the claim that on or about February 4 or 15, 2009, Defendants Doom and Pennrose pushed Santiago resulting in an injury to his hand that required a trip to the hospital and stitches; 2) the claim that Defendant Doom directed medical not to assist Santiago when his stitches came open; 3) the claim that Defendants Gee and Williams refused to give Santiago a wheelchair or crutches to assist him in getting around the prison; 4) the claim that Defendants Fulkerson and Hiland denied Santiago adult briefs and clean linens when he suffered from urinary incontinence; 5) the claim that Defendants Hope and Hayes made

Santiago crawl to his cell on his hands and knees; and 6) the claim that Defendant Williams placed Santiago in a room all by himself and turned the air conditioner up to punish Santiago for filing grievances.

5)    All claims against them having been dismissed, the Clerk of Court is **DIRECTED** to **TERMINATE** the following Defendants as parties to this action: 1) LaDonna Thompson; 2) Kimberly Flannery; 3) Scott A. Haas, M.D.; 4) Shauna Nelson; 5) Angela Lyle; 6) Rob Jenkins; 7) Randy Adkins; 8) Ruth Rust; 9) Donna Renfrow; 10) Sandy McKinney; 11) Bonita Zimmerman; 12) Louis R. Korfhage; 13) Lynn Chism; 14) Lt. Fred Basham; 15) Lt. James Vincent; 16) Ron Beck; 17) Lt. Frailey; 18) Shannon Von; 19) John M. Dunn; 20) James L. Erwin; 21) Al C. Parks; and 22) Billy Herrin.

The Court will enter a separate Scheduling Order to govern the development of the surviving claims.

Date:

cc:    Plaintiff, *pro se*
       Defendants
       Kentucky Justice and Public Safety Cabinet
4412.008