UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
AT LOUISVILLE

CIVIL ACTION NO. 3:10-CV-039-H

ALBERTO SANTIAGO                                                                                         PLAINTIFF

V.

NANCY DOOM, et al.                                                                                       DEFENDANTS

**MEMORANDUM OPINION AND ORDER**

Plaintiff, *pro se*, is a state inmate in the custody of the Kentucky Department of Corrections (hereinafter, "DOC"). Plaintiff alleges that between October of 2008 and July of 2009, Defendants, who are employees assigned to the Green River Correctional Complex (hereinafter, "GRCC"), subjected him to a series of unconstitutional First and Eighth Amendment violations. Defendants, Nancy Doom, Janetta Fulkerson, Eric Woodward, Lorenza Abrams, Rickie Williams, Steven Ford and Peggy Penrose have moved to dismiss and have provided detailed responses to the allegations, including affidavits which factually discredit the complaint. Even though the Court allowed Plaintiff an extension of time to respond, he has not done so within the last three months.

I.

To establish a valid First Amendment claim, a prisoner-plaintiff must establish that: (1) he was engaged in protected conduct; (2) an adverse action was taken against him that would deter a person of ordinary firmness from engaging in that conduct; and (3) the adverse action was motivated, at least in part, by the protected conduct. Here, although Plaintiff filed any number of grievances, no evidence suggests that Defendants engaged in any improper adverse

action, much less, that an adverse action was taken against Plaintiff motivated, at least in part, by Plaintiff's filing of grievance. In fact, Plaintiff's claims appear to be contradicted by the documents which Defendants provided. Consequently, this Court will dismiss all of Plaintiff's First Amendment retaliation claims.

## II.

To succeed on an Eighth Amendment challenge based on denial of minimal standards of human existence, the inmate Plaintiff must establish: (1) a single, identifiable necessity of civilized existence is being denied and (2) the defendant prison official acted with a sufficiently culpable state of mind. *See, e.g., Wilson v. Seiter*, 501 U.S. 294, 298 (1991).

Defendants deny using excessive physical force against Plaintiff in any situation. Plaintiff's claims cannot be substantiated in any manner. Strikingly, several of Defendants demonstrated their absence from the GRCC on the dates in question. Also, Defendants have shown that some of Plaintiff's complaints were virtually an impossibility.

On January 16, 2009, Plaintiff did fall against a fence and cut his hand. Defendant Penrose had some tangential involvement in providing Plaintiff medical care on that day. However, according to the information Plaintiff gave the medical staff during treatment, he injured himself by falling while he was walking around GRCC and trying to grab hold of a chain link fence as he fell.

Overall, the electronic medical records show that Plaintiff received medical care as needed. For instance, though Plaintiff complains of not receiving medical care on or around February 26, 2009, he spoke to the Medical Department a couple of days prior, on February 26, 2009, a few days later, on March 4, 2009, and then every day, multiple times a day from March

9, 2009 until March 13, 2009.

Plaintiff alleges his stitches came open but was denied medical treatment based on Defendant Doom's orders. Review of Plaintiff's medical records shows that Plaintiff received stitches following his first fall on January 16, 2009. Those stitches were then removed by GRCC staff on February 2, 2009. Plaintiff did not again receive stitches until April 15, 2009, as a result of an unrelated matter. Thus, on February 26, 2009, Plaintiff did not have any stitches anywhere on his body.

Plaintiff also alleges that he was denied a wheelchair or that it was taken from him. However, Plaintiff did not have a wheelchair with him upon his arrival to GRCC. No orders in his medical record authorize him to have a wheelchair. The GRCC medical staff examined Plaintiff upon his arrival and determined that Plaintiff had absolutely no medical need for a wheelchair. During Plaintiff's initial medical screen upon arriving at GRCC, Defendant Sgt. Abrams informed Defendant Captain Woodward that Plaintiff was claiming that he needed a wheelchair in order to get around. Because the wheelchair order was not in Plaintiff's medical file, Woodward then called Plaintiff's previous medical providers, the Little Sandy Correctional Complex Medical Department, who confirmed that a wheelchair was not authorized. Thus, Plaintiff was denied a wheelchair because he had no medical need for a wheelchair, not due to retaliation.

Plaintiff alleges that Defendant Fulkerson denied Plaintiff adult diapers for urinary incontinence and refused to allow him to have clean linens for several weeks after he repeatedly wet himself when his legs went numb in his bed. Defendants again dispute Plaintiff's claim. Although Plaintiff claims he needs diapers to address an ongoing problem with urinary

incontinence, there is no indication that he had urinary incontinence. Sandra McKinney examined Plaintiff specifically about his alleged incontinence. Her nursing assessment notes:

> The incontinence that the inmate complains of has not been reported to any staff at the dorm. He has not had an increase in the amount of laundry he does or any complaints from other inmates. He has never been seen with wet pants on. During this interview, the inmate stated, "whoops, there it goes" and looked down at his crotch. No area of wetness appeared although inmate states that he had just urinated on himself.

In fact, on July 23, 2009, during GRCC's standard medical assessment performed before transferring an inmate to another correctional institution, Kentucky State Reformatory (hereinafter, "KSR"), Advanced Registered Nurse Practitioner Kristy Dietrich noted:

> IM Santiago's ambulation has improved well enough for him to walk the considerable distance from his dorm to the dining hall for most every meal, though he sometime skips breakfast. Though he has repeatedly requested a wheelchair and adult diapers, IM Santiago has done well without either of these. There have been no complaints of incontinence from either his cellmate or his dorm officers though we have been actively observing for a problem. IM Santiago's nervous tics and jerks improve dramatically when he is unaware he is being observed and/or he is distracted.

Four days after ARNP Dietrich noted that he can walk considerable distances and had no observed history of incontinence, Plaintiff again demanded a wheelchair and diapers at his new institution, telling KSR medical staff that he can only walk short distances, he cannot walk far enough to function in the general population of inmates, and also complained of urinary incontinence.

As Plaintiff had no medical need for adult diapers or extra linens due to urinary incontinence, the denial of unwarranted medical treatment is not an Eighth Amendment violation.

4

Plaintiff's claims amount to nothing more than a disagreement about medical treatment. In virtually every instance no evidence supports Plaintiff's allegations. "[W]henever prison officials stand accused of using excessive physical force in violation of the Cruel and Unusual Punishments Clause, the core judicial inquiry is . . . whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." *Hudson v. McMillian*, 5 U.S. 8, 6-7 (1992). It is thus axiomatic that there can be no valid claim of excessive physical force if the Plaintiff-prisoner was never touched with force, as was the case with Plaintiff's allegations against Defendants here.

Similarly, while denying an inmate medical care and other necessities commiserate with minimal standards of human existence can violate the Eighth Amendment proscription against cruel and unusual punishment when the defendant acts with deliberate indifference, denial of medically unnecessary care cannot serve as the basis of an Eighth Amendment violation. The Court will dismiss this part of Plaintiff's Eighth Amendment cruel and unusual punishment claim.

## III.

The Court has reviewed the complaint, Defendants' detailed responses to it and has noted the absence of any response. All of the records produced show no evidence that Plaintiff's allegations are likely true. Though Defendants have made a compelling motion for sanctions, the Court will deny it at this time in consideration of Plaintiff's pro se status.

Many of the allegations fall into the category of complaints about his medical care. The responses demonstrate that Plaintiff received an abundance of medical care. His complaints were certainly not ignored. To the extent Plaintiff complains about his care, those requests were

5

considered and rejected.  These circumstances cannot form the basis for a constitutional claim.

As a consequence of the Court's rulings, there are no claims remaining against those originally named as Defendants.  Some of those persons cannot be identified; some may never have been served; and others have not actually moved for dismissal.  Nevertheless, the absence of an viable or supportable causes of action necessitates the dismissal of all Defendants as well.

Being otherwise sufficiently advised,

IT IS HEREBY ORDERED that all Plaintiff's claims are DISMISSED WITH PREJUDICE.

IT IS FURTHER ORDERED that Defendants' request for sanctions is DENIED.

This is a final order.

cc: Alberto Santiago, *Pro Se*
    Counsel of Record